## DAMON MUTUAL BENEFIT ASS'N v. HOWARD.

No. 20345. Opinion Filed Jan. 26, 1932.

Wilson & Duncan, for plaintiff in error.

Leahy, MacDonald, Maxey & Files and C. Luther Hamilton, for defendant in error.

KORNEGAY, J. The lower court entered its judgment whereby defendant in error recovered of plaintiff in error the sum of $1,000 on a certificate of insurance, alleged to have been lost, which was on a form designated as exhibit 2 in the case-made. Trial was before the court. It appeared that Roder Nyberg, an insured member of the group to which the deceased in this case belonged, had died and an assessment was made to cover the loss, as shown by exhibit 4, as follows:

"Important! Return This Notice With Your Remittance. Last Printed Line Shows Assessment and Amount Due.

"Month    Assessment    Amt. Due    Date Due

"July July 1 '27 Roder Nyberg, 1.10.

Picher

"Ask the Widow Whose Husband Was a Member.

"Assessment Notice

"Payable within 15 days

"Mail Now

"And

"Make Sure.

"Dear Member:

"The board of directors hereby gives notice of an assessment due on your certificate number and for the group given below. This assessment and amount is explained on the

last printed line of the back of this card. This assessment will be marked paid when received by us and this same card will be returned to you when other assessments are due.

"Fraternally,
"James B. White,
"Sec-Treas.

"49 A-2 12-15-23 311
"Mr. Charles A. Howard,
"Box 1062,
"Pawhuska, Okla.

"Return This Card With Your Remittance Damon Mutual Benefit Association Box 299 Oklahoma City, Okla."

Notice, of which this is a form, was sent out by mail to deceased, in due course, on July 1st. Another notice was sent out on the 16th, another on the 25th, and another on the 31st. The by-laws required the first notice, the others being sent out by "business practice and courtesy in maintaining the membership." The company's amended articles of incorporation, approved by the Insurance Commissioner May 29, 1925 (Exhibit 5), were offered in evidence.

A certified copy of a by-law, introduced in evidence (exhibit 6), is as follows:

"Article VI.

"Section 1. It shall be the duty of the board of trustees to order all assessments when due or whenever, in their opinion, it shall be necessary. A notice of every assessment called for by the board of directors must be mailed by the secretary to each member of the association.

"Section 2. It shall be and is hereby made the duty of each member of the association to remit promptly the amount of each assessment made or levied by the board of directors, to the treasurer of the association at its business office in Oklahoma City, Okla. Such assessments shall be due and payable within 15 days from and after the date which notice hereof bears, any member who shall fail to remit or pay such assessment in time to have the same in the office of the Association in Oklahoma City, Okla., on the 30th day after the date which notice of assessment bears, shall ipso facto cease to be a member of the association, and his benefit certificate shall then and there cease and be determined, and the mailing of said notice to his last address as given by the member to the secretary shall constitute due and legal notice of said assessment, or referring in any way thereto, whether sent prior or subsequent to the expiration of said 15 days next following the date which said notice bears, shall in no case be, or be construed as, a waiver of said default and the payment of said assessment by any member of the association, or as a retention or as a reinstatement of said member in, or into the membership hereto, and no member shall or may be reinstated as a member hereof, except by the board of directors, or a duly constituted committee thereof on terms to be prescribed by the said board of directors."

Remittance of the assessment against deceased for the Nyburg payment, accompanied by a certificate of good health, was received at the office of the company August 3, 1927, and credit given on the books by Mr. White, its secretary-treasurer. Notice of death was received at the company's office in Oklahoma City August 4, 1927. Investigation showed that the certificate holder, after the lapse of the certificate, had died on August 2nd. An assessment notice was sent out by the secretary, after receiving remittance for the Nyburg assessment, to cover payment on account of Hal B. McKnight, deceased, appearing as defendant's exhibit A.

The allegations of the petition were that the insured died August 2, 1927, and all dues were paid at that time and demand was made for recovery of $1,000 and 6 per cent. interest from August 2, 1927. Exhibit 1 is as follows:

"Your Certificate Number and Group Is Printed Below. Important! Return This Card With Your Remittance. If Your Original Notice Card Is Available—Send It Also.

"49 A-2 12-15-23 311
"Mr. Charles A. Howard
"Box 1062
"Pawhuska, Okla.

"If you have changed your address make correction on this notice.

"The Assessment You Failed to Pay Is Printed Below.
"Date    Assessment    Amount    Date Due
"July 1 '27 Roder Nyberg, 1.10 July 30, '27.
"Picher
"Health Certificate.
"Date Aug. 1, 1927
"(must be dated)

"I hereby declare I am in good health and have not suffered any accident or sickness that would impair my health, to my best knowledge and belief, and I make this declaration for the purpose of reinstating my certificate number and in the group printed on the back hereof. I enclose herewith the amount of the assessment printed above as a tender for this reinstatement. I fully understand this reinstatement is not to take effect until received and accepted by the association and may be returned to me if not accepted.

"Signature Chas. A. Howard
"Box 1062, Pawhuska, Okla.

"No One but the Member Whose Name Appears on the Back Hereof Can Sign This Certificate.

"Damon Mutual Benefit Association, Box 229, Oklahoma City, Okla."

According to the testimony of the plaintiff below, she signed the name of the insured to the health certificate, having received it on Sunday afternoon and mailed it on Monday morning with the remittance before 8 o'clock in the morning. She signed his name, but without being specially authorized to do so. Her detailed statement is as follows:

"By Mr. Wilson: Q. Well, Mr. Howard frequently let his insurance lapse and reinstated, isn't that true? A. Only one time that I knew of and at that time he gave Mr. White a ten dollar bill himself and Mr. White gave him a receipt for same, and he showed me the receipt and he told him that would pay him up for the balance of that year, and that was in July, and in September he got another notice of a dollar and ten cents, and he kept that up every month. Q. Well, Mrs. Howard, I ask you to examine that written signature 'Charles A. Howard,' and see if you know who wrote that upon that exhibit. A. Well, I—I signed that, I sent that dollar and ten cents. Q. And did Mr. Howard—A. And I did often though. Q. Why did you sign Mr. Howard's name? A. Because ____Q. Did he tell you to do so? A. Because I always did, I did the business in the office and always ____Q. Did he authorize you to sign this? A. Not this particular one. because I had been doing that time after time."

The deceased was moved from his home to the hospital on Sunday night, July 31st, about 9:30 o'clock. He remained at the hospital thereafter, and died at 8 o'clock a. m., August 2, 1927. The $1.10 was returned about August 14th, the board of directors having declined reinstatement. On receipt of the remittance the secretary sent out a notice of the Nyberg assessment, referred to above. The circumstances of the death were in evidence detailed by the beneficiary, the plaintiff below. Deceased was under the care of a doctor during this time. Roder Nyberg died about the 25th of June, and the due date of assessment, contained in Exhibit 4, shows it was July 1, 1927, and this appears to be the assessment that the plaintiff below stated she sent on the 1st of August and was received on the 3rd of August with an application, not signed by the insured but by her, showing good health.

Most clearly, under these by-laws and the statutes, the deceased was not a member in good standing at the time he died, and the directors would have violated their duty to have paid the $1,000 recovered in this case. A living man might be reinstated under these by-laws by positive action by the board of directors with knowledge of the facts, based on a health certificate signed by him, but not a deceased one, whose health certificate was signed, not by the insured, but by the beneficiary, as this record shows. There does not appear any reasonable excuse for the insured's signature not being put on the certificate of good health by himself, as distinguished from its being put there by some one else without his knowledge.

An attempt was made in the examination of the secretary to establish that on other occasions the deceased had been reinstated, as shown by the cross-examination of the secretary, beginning on page 85 of the casemade. According to that record, the March assessment was received on March 7th, the April assessment was received on April 29th, and the May assessment was received on April 29th. The testimony is as follows:

"Q. And this book showed that Mr. Howard's assessment for February, 1927, was made on the 7th day of February, doesn't it? A. I would have to look. No, sir; it does not show the February assessment. Q. It shows 'two.' A. That is a 'three.' Q. Oh, that was the March assessment. A. Yes, sir. made. Q. Made on the 7th? A. Shows it was received on March 7th, yes, sir. Q. And the April, or rather it would be the March, assessment was received on April 29th, wasn't it? A. April assessment was received on April 29th. Q. April 29th? A. Yes, sir. Q. And the May assessment? A. Was also received on April 29th. Q. That was the April assessment? A. Evidently there was a payment of twice the assessment at the time this one was made. That is oftentimes the case if they pay in advance sometimes."

This was a double assessment, as related by the secretary, but according to the amended articles of incorporation a membership fee of $2 was required, one dollar being payable May 31st and the other November 30th. The evidence is not clear as to whether there was an assessment payable in June, under the testimony on page 86 of the casemade. On page 88 it appears to be cleared up that the assessment for July was the one that was received the 5th of July, and not one for June.

From these receipts of payments, the argument is made that the case of K. of P. Lodge v. Ewing, 133 Okla. 179, 274 P. 22, is applicable. We do not think so, as under the plain requirements as to reinstatement the deceased was not a member in good standing. This is an insurance company that has no capital stock and relies upon the assessments being paid promptly, as a means of continuing business, and it is especially provided that nobody could reinstate except the board of directors, which was not done in this case. It is further clear that the board of directors could not have done so upon the showing made here. had they

chosen so to do. They did not choose so to do, but returned the money and refused to reinstate, as the certificate was untrue and not properly executed and the man was dead. This kind of insurance is regulated by our statutes, and under the statutes every member thereof must comply with the by-laws by paying the assessments, and if the directors should favor one part of the group over another, it would cause an inquiry to be instituted by the insurance department and probably loss of the right to do business.

Evidently the Legislature recognized in the year 1925 that the original plan of doing business here might be illegal, and so, as shown by chapter 32, Session Laws of 1925, they required an amendment of the articles, and when that was done they were authorized to do business on that plan, and were subject to regulation and were placed under the supervision of the Insurance Commissioner. The amended articles evidently were framed in accordance with the provisions, and by section 3 thereof and section 4 thereof the members were bound by any change in the by-laws. By section "e" of paragraph 4, there could be no waiver of by-law provisions brought about by conduct of the secretary, and by section "g," if the members did not pay in promptly so as to have a fund on hand, the company was liable to be put out of business by the insurance authorities. It is not deemed necessary to lengthen this opinion by setting out the act in full.

Under the admitted facts in this case, there was no liability of the company, and a payment to the plaintiff was unauthorized. The judgment, therefore, is reversed, with directions to render judgment in favor of the plaintiff in error at the cost of the plaintiff below.

LESTER, C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., dissents.